May it please the court, my name is Robbie Robertson and I'm here on behalf of John Beck. And John Beck was not one of the corporate defendants in this case, there are two other corporate defendants who are not here, Mr. Gravink and Mr. Hewitt. They were found jointly as heavily liable as was the company. There were two companies involved, one of which has the name of John Beck. And I think the court below was confused a little bit about that, because John Beck Amazing Profits is not owned, operated, has no relationship at all to John Beck. He had licensed his name to family products. And in that license, he actually gave up all rights to review any of the advertisements at issue in this case. He had no right to control it. They had, at the other company, Mr. Hewitt and Mr. Gravink, they actually said that John Beck did not control or have decisional authority, that's a quote, over the products. And that's at page 211 of the record, and also at 202 of the record. This case is very unusual. There's no other case like it except for perhaps Garvey, and that is that what Mr. Beck actually did when he sold his product, that's not an issue in this case. Both the court and the FTC actually thought that Mr. Beck did it right. And at page 388, in an interrogatory answer from the FTC... This doesn't make any sense whatsoever. Nobody is saying that the materials in the, whatever it was, a booklet, pamphlet, whatever the thing was that the customers received, no one's saying that the information in there was false. But if you look at that material and compare it to the things that your client actually said in the infomercials, it's clear that what he said was misleading. That's the basis for the case. So there is something that your client did wrong, and I guess I'm actually hard-pressed to see how we could reverse on that basis. So maybe you can just jump right in and explain why what your client actually said was not misleading in light of the materials that were provided. And we could go through each one of the statements, but the fact is that when Mr. Beck actually sold the product himself, the FTC thought that he actually had showed how difficult it was to make money. That's at 171 to 172. Mr. Counsel, again, this case was about what he said on the infomercials. For example, when he said, I've sold thousands, or I've purchased thousands of these homes, and then the deposition admits he's actually purchased less than 10. May I respond to that? Yes. And read the deposition on that particular point. He said he sold 10 homes. He sold over 2,000 properties that were land. He, in fact, did that. That's not in dispute in the case. What the FTC put in their brief is, oh, he said he only sold 10 homes. That is true. And when he sold his own product and told people how to do this, he was telling them primarily how to sell property without homes on them. Now, the infomercial that we're talking about here, there's no evidence Mr. Beck has ever seen it in his life. He did not produce it. He did not edit it. It's a long infomercial. It's like he's in a long commercial. But I'm talking about the words that he actually spoke. So he can't deny knowledge of those representations. He made them. And I'm saying that those representations, compared to the product that was delivered to the consumers, they don't jive at all. And that's the problem I have with your position here. And I believe, Your Honor, that Mr. Beck, if he'd been given a chance to actually be heard, because he disputed every one of the issues that were in the case, that's all beginning at page 233 of the record, with evidence, that in context, and the context here is important, when he sold the product, he made it very clear what he was talking about. He does believe it is easy to use his system. He didn't say, but it is not difficult to make money, because it's taken him many, many years. He's in his 70s now. And that was what he was doing for a living. He was actually selling and buying land using his system, which nobody disputes was fraudulent. Now, it's different if he actually had seen the commercial and knew what it was all about and had the ability to control it, which he contractually did not. And then could say, look, I want to change the commercial. He had no contractual authority to do that. There are two other defendants who did, and they should have done it the way John Beck did when he sold the product. He gave them the materials he had, and they should have used his materials the way he did, and they did not. And he didn't know that. And that's very clear from the record itself. In page 255 of the record, Mr. Beck said he didn't write any scripts. He didn't know whether he'd even seen any of them. And he was not present during the entire filming. In fact, there were apparently two filmings. One of them he wasn't at. The other, he was there for a few minutes. So he was not involved in editing. When you make a movie, make a commercial, you take a lot of information and you edit it down. And context matters. Right. But he's not being held liable, right, for the material that he didn't actually, the representations that he didn't actually make himself. In a way, he is, Your Honor, because you read what the court said and what the FTC argued was because he knew how to do it correctly when he sold it, he sold it properly. But therefore, he should be liable for what the infomercial said because that didn't do it that way. Because the statements that he himself made were themselves misleading. That's the basis for the judgment against your client. Yes, Your Honor. It has nothing to do with what the other people were saying or other segments that he had no involvement in. I grant you that he wasn't the controller of the entire infomercial. But I just focused on the things that he actually said himself. Compared them, compared those representations to what the consumers got. And to me, they seem completely misleading. Just take it away from all the other representations, just his own representations. So why am I wrong in coming away with that view? Yes, Your Honor. And I hear you. And I think that in context it matters because when Mr. Beck explained his product to other people, he didn't have a problem explaining it correctly. Other people, the family products company and Mr. Hewitt and Mr. Gravig were the ones that were explaining it to the world in the infomercial, not John Beck. He didn't write it. He didn't look at it when it was finished. Now, maybe at some level, maybe he could have got a hold of it and gone through it and said something. But at the very beginning, when you write a contract and sign it and say that the family products has the right and sole judgment to alter the context and the components. And they had the exclusive right to sell and market the product and they had exclusive control. And it isn't a dispute between the defendants because the other two defendants said the same thing. They said Mr. Beck didn't have any control over this. And the things I just read from are in pages 91, 93 and 94 of the record. Now, that's just the first stop here. I do believe that Mr. Beck ought to have a right to a trial because everything was contested and I think context matters. We need to talk about the damages. That's really why we're here. And Mr. Beck was hit with a, and Your Honor, I'm a trial lawyer and I don't do this very often and I forgot to tell you how much time I wanted in reserve. Just give me two minutes, please. Okay. Thank you. I apologize for that. But under 13B of the FTC Act, a court, I think, do you know of any cases that a court may not hold co-defendants jointly and severally liable for restitution of ill-gotten revenue from a joint scheme? I think that there are two questions within that. One is jointly and severally and the other is how much. Because I do think courts have made a distinction in equity cases between how much. We just saw it. But your client was held jointly and severally liable. So give me a case on that that said that didn't happen. Well, in the Byrne Lounge case, which is unreported, just came out here this last year, there were different amounts that were given for each of the defendants depending on their culpability. But yet they were still jointly and severally liable. The Hadley case, which is an SEC case, but it's equity, same rule, there's nothing special about this FTC provision, I'd like to talk about that, because I have litigated that provision quite a bit, both on the outside and, frankly, for the FTC. But when you look at Hadley, Hadley was found jointly and severally liable, but the amount that he was held liable for was only the amount that he received. Well, of course, it's still jointly and severally because the other defendants also are responsible for that amount, too, so there's an overlap. It is jointly and severally for that amount, but the people who received the other amount, which was much greater, they are responsible for that. When you look at the Wallenbrook case, which is also an SEC case under equity, again, you have three defendants, very much like this case. You have two defendants who were the ones running the company, who were responsible, they were directing the traffic, they were held jointly and severally for the whole thing. There was a third defendant, right at the very tail end of the case, who only was responsible for a certain part of the sales. Also held jointly and severally liable, but only for that amount, which was a much smaller amount. Now, that is what we have here. If Mr. Beck is liable, and I don't believe he is, and I won't go back into that now, but if he is liable, we have to go through several steps to even get there under the law, which I want to talk about, and once we get there, he isn't liable for $113 million, which he never received. Let me ask you about that, counsel. As I understand the record, initially the battle in the district court was over if it was $113 or $112 million. Then once the briefing closed, then there was a request, I think, for some sort of supplemental brief, and this argument was kind of raised past the district court's filing deadline. Why isn't this whole argument by you waived in this case? Well, I think because now, at this point, both sides did brief it and the court did rule on the issue I'm arguing here today. Now, why did it happen that way? I think it's fairly clear from the record we even said so. The last brief that was filed was filed by the company's lawyers who were representing Mr. Beck, too. I don't think that was appropriate, and I think somebody should have said something. Mr. Beck should not have been represented by the company lawyers who were representing Mr. Gravick and Mr. Hewitt and Family Products. In their final brief, that's all they talked about was the entirety of the company, and so Mr. Beck was pretty stunned by all this. We then came in the case and moved as fast as we could, and I'm doing my very best to represent him. And if you read the record, you know we're doing this for free. I'm not getting paid for any of this. I just believe in the issue, and I'm here representing him. So that's why it happened, and I know what the law says, and I think the law says, okay, but once you've fully briefed it and the court's ruled on it, let's go ahead and have it heard here because it is an issue that I believe this court should address. Now, when you get to it, how do you get to the money? I think that we mentioned Great West. I think there's been briefing on that. The court knows the issue as well as I do. This is equity. There are two provisions under the FTC Act. There is 13B, which is 53B, and there is 57B, which is called 19B under the FTC Act. Under 19B, you have to actually go through a trial through the administrative process, and then you can get a judgment, and then you can get essentially a recompense for the harm. You can get a lot more than you got in this case. Counselor, you're running low on time, so this long windup is going to hurt you. But let me just cut to the bottom line. Are you saying that joint and several liability is okay within the context of equitable restitution, or it is not? I think for the – but you can sever the amount that each person – All right, but the concept of joint and several liability, is it compatible with equitable restitution? I think it is, and that's why I mentioned those other cases, because that's what they did. So let's say that you've got two participants, right, who are as integrally involved as one another. They're equally culpable in a scheme that defrauds people of $100 million. They each only get $50 million of it, okay? Are you saying that if the court orders $100 million in restitution and imposes it jointly and severally, that that is okay, or it's not okay? If they are, in fact, the company, which is what almost all these cases are from Stefanik – I'm talking about two individuals. Forget a company. Two individuals who together bring in $100 million, and they each get half of it. Can they be held jointly and severally liable for $100 million in restitution? Yes or no? And, Your Honor, that case is – Yes or no, Counselor? That's Stefanik, and the answer is yes. Okay. Under Stefanik, they control the company. Okay. So what is your issue with the joint and several liability imposed here? It's just that your client didn't have as integral an involvement as some of the other players? Or what's the – Yes, Your Honor, and that is what the restatement of restitution says, which we cited in our brief. And we believe that that's what this court has been doing in other cases that are not FTC cases. This particular issue hasn't come up here in the FTC context. Under 13b, all it says is, upon proper proof, you get a permanent injunction. That's the only phrase that's in the statute. It's the same phrase that's used in merger cases. I've tried them under merger cases. 13b encompasses everything. I guess I'd better stop if I don't have any time left. Well, I'm going to give you two minutes on rebuttal anyway because we've answered the questions. Okay, good. So stop, and I'll give you two minutes on rebuttal. Okay. And if we need more time to fully vet this, we'll take it. Thank you, Your Honor. Okay, thank you. Good morning. Good morning. Before we start the clock, are you going to be using all the time yourself? I see you have someone at counsel table. Are you going to be sharing time? She's counsel for the next case. That what? She's counsel for the next case. So you're flying solo for this one. Oh, okay. I just wanted to find out if we had any split of time. No split, Your Honor. Okay, go ahead. May it please the Court, my name is Jack Metzler. I represent the Federal Trade Commission. The liability of John Beck is pretty clear in this case, as the panel has already noted. Mr. Beck personally told consumers in his infomercial that they could easily make lots of money from buying and selling properties that they would buy at government tax sale auctions. He told them it was easy. They could buy properties for pennies on the dollar. Can I just jump you to the money issue? So is there no limit on the way joint and several liability can be imposed in this context? I mean, the example I gave, $100 million fraud, there are multiple participants. Let's say that I'm a bit player in the fraud, but I'm in it. I made misrepresentations. I meet the standards for individual liability. But, you know, I really played a tiny role. I got a tiny bit of the profits. Can I really be held liable for $100 million in restitution? Well, that's generally the way joint and several liability works. But this is a case that, you know, comes up in the courts equitable. Well, yeah, it's a little bit different because 13b, I'm assuming that you agree that only ancillary equitable relief is available under Section 13b. Well, and also an injunction, but yes, an injunction. Right, and so if only equitable rather than legal restitution is available under Section 13b, why wouldn't the Supreme Court's limitations on equitable restitution discussed in Great West such as traceability apply here, which I think dovetails into what Judge Watford is talking about? You know, can you really get every, you know, let's say someone was really a bit player. Why do you get the whole $100 million against them? One of the actors in the commercial, for example. Yeah, so I think there are two separate questions, and I apologize if I misspoke on the previous question, but I don't think your second one follows from the first. The main reason that Great West in the analysis that is provided in the discussed in Mr. Beck's brief doesn't apply is Great West is all about the question, what kind of case, what kind of claim do we have before us? And under ERISA, the Supreme Court has held that, you know, that has to fall into a certain narrow category. And what the court found was, well, it's basically a contract claim. In this case, there's no question about the basis of this claim. It's for an injunction. That's an equitable relief. And the monetary relief is, as you said, that's ancillary. That follows on. That is part of the court's authority under sitting inequity to mold an order to do complete justice in the case. So at the very get-go, Great West is a completely different case, and there are other sort of more technical reasons why. So it has nothing to do with this? It really doesn't, Your Honor. And so then the second question is going back to the... Would the U.S. Supreme Court say that? Did the Supreme Court say that? Would the U.S. Supreme Court say it has nothing to do with this case? I think they would. The Supreme Court in Porter against Warner and Mitchell v. DiMario Jewelry analyzed statutes like Section 13B of the FTC Act, which give the courts the authority to enter an injunction. And what the court said is when Congress does that, it invokes the equitable jurisdiction and that it's not limited unless, by the words of the statute or an inescapable inference, Congress has limited it. But doesn't recent restitution discussed in a separate section? Well, the court actually does discuss this very point that I'm making in Great West. And what the court says is unlike the equity court's general power to afford complete relief and the broad powers of a court sitting in equity, in Great West we're talking about ERISA. And the necessarily, by its words, or necessarily inescapable inference is right there in Section 502A3B of ERISA, which says that the private relief that is available under ERISA is limited to other equitable relief. And in a prior case called Mertens, the Supreme Court held that that language, other equitable relief, means something less than all the relief that a court in equity could grant. Whereas here under Porter and Mitchell, which in this court's case of Singer, of course, and many others, there is no limitation. Section 13B says in a proper case the commission can get an injunction. And that is exactly what the Supreme Court in Great West was talking about, the full powers of the equity court. Counsel, can I bring you back to the question I initially posed? So were you going to say that there is a limiting principle or there is not? Well, I think there are a couple of limiting principles. One of them is that when the court sits in equity, it is able to take account of the sort of facts that you discussed, whether the person is a bit player, the amount of their culpability. They also may be able to persuasively argue for other defenses, for example, in Garvey. But you're just saying the court could just say, you know what, given the facts of this case, it's just not fair to impose joint and several liabilities, so I'm just not going to do it. That's the limiting principle. And once the court does it, then what? That's what obviously Mr. Beck is arguing here, right, is that I cannot possibly be on the hook for $100 million. Are you kidding me? Look at my limited role in this. You can dispute that on the facts, but I'm just talking about in terms of the legal principle. If that were true, if we were to conclude that, you know what, Mr. Beck's right, he really was the bit player that I described in my hypothetical, I'm just trying to get a sense, are you saying that the choice just becomes at that point for the court, I either do impose joint and several liability or I don't, and that's? Well, as I said, the court sitting in equity can take account of those kinds of facts, and when it came to this court, it would be subject to an abuse of discretion standard as the imposition of monetary relief is. Of course, it has said that in several cases. But I kind of understood your position to be a little bit different. I thought that you're saying that it's got to be joint and several and that the joint and several, if you want to trace it, it goes to the ill-gotten goods of all the co-defendants rather than the individual defendant. That's also true, Your Honor. So how can that be consistent with if the judge had done, you know, said Mr. Beck isn't a major player here and so I'm only going to hold him for X amount, wouldn't that be inconsistent with the position that you're also taking here? I don't think they are inconsistent, Your Honor, and that's because. Because that would allow the court to break out to trace to the ill-gotten goods of the individual defendant as opposed to all the defendants. Well, I don't think I would use the word trace, but I think in certain circumstances. If Great West applies at all and traceability has anything to do with it, then it would. Well, I think our position, of course, is that Great West doesn't have anything to do with it. Everyone spent a lot of time talking about that, though, so it might have something to do with it. You know, it has to do with it as an argument that doesn't apply. But as to the prior question, in this case, Mr. Beck was responsible for the whole thing, right? He's the expert. He's guaranteeing. He's saying, I personally guarantee you you're going to be successful with my system. In fact, nearly four million people bought this and hardly any of them made any money. And of those, like only one in ten made, you know, a tiny, tiny proportion made any profit. So you're just back to the factual argument that he isn't the bit player? Is that what we're on? Well, but the point is that the district court is sitting as a court in equity and has the discretion to take account of certain facts. And when it comes to this court, you have to find that that is an abuse of discretion in this case. In your hypothetical case, it would be the same. So, you know, you said this person's a bit player. They've done this or that. Even though you don't think Mr. Beck was a bit player, would you have been? But I thought you opposed that argument of a bit player, that it was joint and several as to the ill-gotten goods of all of the defendants. Well, it's certainly proper. That that's the proper way to look at it, which would not allow for a bit player. Well, district courts have held, and this court has upheld, judgments that were for less than the full amount of harm, based on as many factual situations as you can think of. The district court is allowed to take those into account. And so, yes, I think the district court could limit it, and I think that's where it would lie. And to the extent that the district court does something that is so unfair and so unreasonable that it amounts to abusive discretion, this court can, of course, reverse on that basis. I don't want to go to the case ahead, but I know everyone's sitting in here. But in that case, my understanding is a couple people settled out for a lot less money, and then the other person went ahead, and it's sort of like you could have had a manslaughter, but then you got hit for murder, and now there's no turning back. It seems that the government's argument in that is a little inconsistent with what you're saying, that you're going to allow people to say they're a bit player, because you're not going to allow people to say, okay, since other people settled and they made a better judgment than you did, you can't consider that when you decide what the full amount is, right? Well, I think that I'm not suggesting that as a legal matter. I'm not saying you're talking entirely out of two sides of your mouth, but if you're asking for a rule, I'm trying to see what Judge Watford is saying. How do we account for this? Certainly in the other case, that it's like if people make a deal that's better for them, then the government's not going to say later, oh, you get a better deal now that you went to trial. You get the full monty. Well, I don't think it would make sense to have a standard that permits a defendant to escape liability based on unwillingness to settle, for example, when, in fact, he is responsible for the conduct and is responsible for the full amount of the harm. So you would say that's distinguishable from the bit player? I would, Your Honor, and I don't want to suggest that the bit player – I'm just saying that that's a fact that the district court could take into account. I'm not saying that necessarily means – in fact, I don't think it in many cases would mean that the person is not responsible for the full amount, because the point of ordering ancillary equitable relief, monetary relief against these defendants is threefold. First, to enforce the FTC Act. If there's not someone out there to say when you do this illegal thing, you're going to lose money, you're going to lose that money, and you may even lose more money than you took in, that provides an incentive against participating in this kind of scheme, and we certainly want people to be – even the bit players. We want the bit players to be deterred. You want to hold the bit players for the whole thing. I mean, really, so that argument isn't one that you would buy, that some people could be less, because what you're saying is as the enforcement arm of this, we want people to know in for a penny, in for a pound, and so none of this – we don't want this going on. Sure. You're describing the government's position, and I think it's likely that we would take that position in many cases. You're wrong, but I'm trying to understand your position. Right. On the other hand, we typically don't go after – for example, in this infomercial, there were a couple of hosts who were sort of actors who just came in, and they said many of the same things, but they didn't have any basis to think that what Mr. Beck was saying was true or false, and we didn't go after them. And typically we don't, but I hesitate to say there's some sort of principle that we can't go after those people, and if we did, they might be able to persuasively argue, as Your Honor suggested, that they should not be held liable or should not be fully held liable. So, counsel, if it is an abusive discretion standard – so as I try to distill what we've been talking about, there's no – your position is there's no BMW v. Gore, Eighth Amendment, due process analysis we do. It's a strict, traditional abusive discretion. Is that right? Well, certainly it's not in this case, and that hasn't been raised. I apologize. I haven't thought about it. What I'm saying is that your position is that we review the district court's judgment here for abusive discretion, correct? Correct. In a typical FTC case, putting Beck aside, if you were sitting at the table over here, what would be an abusive discretion? If you can explain to us – because it can't be rubber stamped. So if, for example, we had the same case as Beck, but one of the actors got up there and said, I've met Mr. Beck before and knew that wasn't true – so some trivial, minor thing – when would a district court abuse its discretion if that's the standard we're using? Well, you can imagine a hypothetical like that. Or let's say someone was a temp who came in and worked for half a day and happened to participate in some of the telemarketing calls that were in this case. And then when they walked out that day, they bought a lottery ticket and won $300 million. So the FTC then goes after this person who actually does have the deep pockets. You can imagine that a court in equity might say, that's just not fair. These guys who are really doing the fraud, who are taking most of the money in, they went and spent it on Lamborghinis and college tuition. And meanwhile, the poor temp was there for half a day. I think that would probably be an abusive discretion. But see, I'm understanding your abusive discretion is, hey, we're the government. We wouldn't go after that bit person. So once we go, any discretion that would be appropriate has already been exercised. Well, I hope that the commission exercises appropriate discretion in the people that we bring as defendants, and I believe that we do. Nevertheless, we don't have the authority of the court, and another limitation is what the court will order. That certainly limits any relief that we can get. And again, to the extent that the district court goes beyond its discretion, this court is to measure whether it's an abusive discretion. I see my time has expired. Thank you for your argument. Thank you. You have two minutes. Thank you. I disagree with the counsel on one thing. There have to be limits to what the government does. And I'm all in favor of the FTC. I spent a good part of my career there. I love what they do. But I had limits when I went to court, and I think they need to have limits. I think that all agencies have to have limits. And when you have a Supreme Court case, Great West, with all this history, I'm not saying we have to agree or disagree with it. It is what it is. But what Justice Cleo was talking about was the history of the division between actual restitution and legal restitution in every case. But, counsel, what did we do with Steffenchik, which we haven't really talked about, was seven years after Great West and doesn't rely on it and holds, as I read the case, that joint and several is okay. So how do we deal, how do we square Great West with Steffenchik as a three-judge panel here? And I think that's something I should go into very briefly because I don't have much time here. Joint and several liability on the first hook of what is an injunction. And in this case, there were lots of things that all the defendants had to do or not do that couldn't get in this business again. There was a long order that was entered into. None of those are up here on appeal. And I think that anybody who was held liable should be subject to that. I also believe, though, that under equitable restitution, not under 19B in the administrative process, under equitable restitution, you have to get the money in the first place to be asked to return it. I think that's what Great West holds, and I think that's what this court has been doing in other kinds of cases, in SEC cases. This particular issue with Mr. Beck in this context hasn't come up here, and that's why I think we're here, because I do think it's important. I do think that the court should find that there is a difference between equitable restitution, and they can get the money differently in 19B. They can try those cases in the administrative process, and it would have taken a year, not nine years. Thank you. Thank you. Thank you both for your helpful argument in this matter. This case will stand submitted.
judges: Callahan, Watford, Owens